## UNITED STATES v. RICHARDS.

District Court, D. Massachusetts. December 9, 1927.

No. 7722.

*Internal revenue* ⬤�longrightarrow42—Limitation on searches of private dwellings in National Prohibition Act applies to searches under liquor revenue laws (26 USCA § 306; Prohibition Act, tit. 2, § 25 [27 USCA § 39]).

The limitation on searches of private dwellings in National Prohibition Act, tit. 2, § 25 (27 USCA § 39), applies to a search for suspected violation of Rev. St. § 3281 (26 USCA § 306; Comp. St. § 6021), by unlawful operation of a still.

Criminal prosecution by the United States against Harry Richards. On motion by defendant to quash search warrant and suppress evidence thereby obtained. Granted.

Elihu D. Stone, Asst. U. S. Atty., of Boston, Mass.

Bernard Ginsburg, of Boston, Mass., for defendant.

MORTON, District Judge. This is a motion to quash a search warrant and suppress the evidence thereby obtained.

The officers had evidence that a large distillery was being operated on the premises in question, a private dwelling. They had no evidence that any sales or deliveries of liquor were taking place there. The search warrant was applied for and obtained without any allegation of sale. It is said that it was issued, not under the National Prohibition Act, but under the internal revenue statute (R. S. § 3281; U. S. Comp. Stats. 1916, § 6021 [26 USCA § 306]), which makes it criminal to carry on the business of a distiller without having given bond, etc. The contention of the government is that search warrants for dwellings may be obtained under this statute without any evidence of sale.

The question is whether the limitations on the issue of search warrants contained in section 25 of the National Prohibition Act (27 USCA § 39) are applicable under this revenue statute. The Prohibition Act forbids the manufacture of intoxicating liquor, and by section 25 makes it unlawful to have any property designed for that purpose. The issue of search warrants to seize and confiscate such property is provided for; but they are not to be issued for private dwellings without evidence that the dwelling is used for the sale of intoxicating liquor. It is the latest general act dealing with the matter.

The adoption of the policy of rigid prohibition was a radical change in the attitude of our government toward intoxicating liquor. Congress, while enacting a very strong statute in support of the new policy, evidently recognized the danger that the very completeness of the prohibition might open the door to abusive and tyrannical searches in *its* enforcement, which would be especially obnoxious when they invaded homes. There were the strongest historical reasons for safeguarding the rights of citizens in this particular. The result was that these carefully guarded restrictions on the search of dwellings were incorporated in the act.

It was, I think, intended to deal with this subject-matter in a complete way. It approaches absurdity to suppose that Congress meant carefully to restrict searches of dwellings for distilling apparatus and liquor under this general and drastic act, and still leave them subject to search for the very same things under old statutes, without any safeguarding provisions. I am aware of no decision which supports the government's position; while U. S. v. Berkeness (Nov. 21, 1927) 48 S. Ct. 46, 72 L. Ed. ——, is distinctly to the contrary. That case arose under the Alaska Prohibition Act (39 Stat. 903, approved February 14, 1917 [48 USCA § 261 et seq.; Comp. St. § 3643b et seq.]), which authorizes search warrants to be issued without the restriction under discussion as to dwellings. In this respect it resembles the revenue statute relied on in this case. It was held that the National Prohibition Act, although enacted later, imposed a limitation on the right to search a private dwelling under the Alaska statute. Attention was called to the Supplemental Prohibition Act (42 Stat. 222, approved November 23, 1921 [18 USCA § 53]), which provides "that any officer * .* * of the United States engaged in the enforcement of this act, or the National Prohibition Act, or any other law of the United States, who shall search any private dwelling as defined in the National Prohibition Act, and occupied as such dwelling, without a warrant directing such search, * * * shall be guilty of a misdemeanor," etc. And it is said: "But the emphatic declaration that no private dwelling shall be searched except under specified circumstances discloses a general policy to protect the home against intrusion through the use of search warrants. * * * The provision of the earlier special act is hostile to the later declaration of Congress and must give way." McReynolds, J. See, too, U. S. v. Stafoff, 260 U. S. 477, 43 S. Ct. 197, 67 L. Ed. 358.

The fact that in the present case the earlier act was general legislation, not special, as in the Alaska case, strengthens rather than weakens the defendant's position. It is not a question of helping out the National Prohibition Act by previous legislation under the Supplemental Act, supra, but of evading and disregarding certain of its provisions which protect individual liberty.

An order will be entered quashing the search warrant and suppressing the evidence. The United States attorney will see that similar entries are made in other pending cases where this question is raised.